UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

JAMES LOSSIA JR, and
ALEXANDRA PLAPCIANU,
*Individually and on behalf of*
*others similarly situated,*

   Plaintiffs,

v.          Case No.
           Hon.
           CLASS ACTION SUIT

FLAGSTAR BANCORP, INC.
aka FLAGSTAR BANK,

   Defendant.

_____/

**CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.**
BY:  RONALD G. ACHO (P 23913)
Attorney for Plaintiffs
33900 Schoolcraft Road
Livonia, MI  48150
734-261-2400
racho@cmda-law.com

_____/

### CLASS ACTION COMPLAINT

   Plaintiffs, through undersigned counsel, on behalf of themselves and all persons similarly situated, allege the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

## INTRODUCTION

1.     This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant Flagstar Bancorp, Inc. ("Flagstar Bank") arising from its unfair and unconscionable assessment and collection of excessive overdraft fees as well as its manipulation and reordering of deposit and withdrawal transactions.

2.     In the era of electronic banking and the ubiquitous use of debit card transactions, the assessment of overdraft fees has become a major profit center for many United States banks, including Flagstar Bank. For years, banks covered customers who occasionally bounced checks without charging their customers. Since the early 1990's, however, banks have devised methods to provide overdraft "protection" for customers and charge them in each instance. A recent FDIC report estimated that overdraft fees represent 74 percent of the total service charges that are imposed on deposit accounts in the United States.

3.     In 2014, banks are estimated to bring in around $32 billion in overdraft charges alone. More specifically, Flagstar Bank alone has reported nearly $4 million in income from service charges on deposit accounts for the first three months of 2015 alone on its income statement attached as **Exhibit A**.

4.     Almost by definition, these fees disproportionately affect the blue collar working class, who are most likely to maintain low balances.

5.      These fees have the tendency to create a domino effect, because the imposition of a service charge on an account with a negative balance will make it less likely that the account holder's balance will reach positive territory, resulting in more fees.

6.      The same considerations are not present when customers use debit cards or electronic checks.   Banks could simply decline to honor debit or electronic withdrawal transactions where accounts lack sufficient funds to execute the transactions. Retail and service transactions could still be executed if consumers presented an alternative form of payment. ATM transactions could still proceed if banks provided a warning that an overdraft fee would be assessed, and customers chose to proceed nevertheless. In  fact,  until  a  few  years  ago,  most  banks simply  declined  debit transactions that would overdraw an account.

7.      Instead of simply declining debit transactions when there are insufficient funds, or warning its customers that an overdraft fee will be assessed if they proceed  with  the  transaction,  Flagstar  Bank      routinely       processes       such transactions  and  then  charges  its  customers  an overdraft fee of $36 for each charge—even  when  the  transaction  is  for  only  a  few  dollars. This automatic, fee-based overdraft  scheme  is  intentionally  designed  to  maximize  overdraft fee  revenue  for  Flagstar Bank. Additionally, as part of its inequitable motive to generate  obscene  profits  gained  through  the  imposition  of  unconscionable

overdraft fees, Flagstar Bank fails to adequately disclose to its customers that they may elect to opt out of overdraft protection.

8.      In many instances, these overdraft fees cost Flagstar Bank account holders hundreds of dollars in a matter of days, or even hours, when they may be overdrawn by only a few dollars.  Even more egregious, customer accounts may not actually be overdrawn at the time the overdraft fees are charged, or at the time of the debit transaction.

9.      Thus, it is through manipulation and alteration of customers' transaction  records that Flagstar Bank maximizes overdraft penalties imposed on customers.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction of this action under the Fair Credit Reporting Act pursuant to 15 U.S.C. § 1681(p) and 28 U.S.C. § 1331.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Flagstar Bank is subject to personal jurisdiction here and regularly conducts business in the Eastern District of Michigan, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in this district.

## THE PARTIES

12.     Plaintiff James Lossia is a resident of the State of Michigan.

13.     Plaintiff Alexandra Plapcianu is a resident of the State of Michigan.

14.     Flagstar Bank is a federally chartered bank incorporated in the State of Michigan which maintains its principal place of business in Troy, Michigan. Flagstar Bank regularly and systematically conducts business throughout the State of Michigan, including in this district. Among other things, Flagstar Bank is engaged in the business of providing retail banking services to thousands of consumers, including Plaintiffs and members of the putative Class.

15.     Flagstar Bank is a federal savings association, subject to the National Bank Act, 12 U.S.C. § 1, *et seq.*, and regulations promulgated by the Office of the Comptroller of the Currency.

## CLASS ALLEGATIONS

16.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

17.     The proposed class is defined as:

> All Flagstar Bank customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred an overdraft fee as a result of Flagstar Bank's practice of re-sequencing debit card transactions from highest to lowest.

18.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

19.    Excluded from the Class is Flagstar Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which Flagstar Bank has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

20.    The members of the Class are so numerous that joinder is impractical. The Class consists of thousands members, the identity of whom is within the knowledge of and can be ascertained only by resort to Flagstar Bank's records.

21.    The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class members, were charged overdraft fees by Flagstar Bank as a result of its practice of re-sequencing debit card transactions from highest to lowest.  The representative Plaintiffs, like all Class members, have been damaged by Flagstar Bank's misconduct in that they have been assessed and/or will continue to be assessed unfair and unconscionable overdraft charges. Furthermore, the factual basis of Flagstar Bank's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

22.     There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

23.     Among the questions of law and fact common to the Class are whether Flagstar Bank:

      a.     Does not clearly disclose to its customers the ability to opt out of its overdraft protection program;

      b.     Does not obtain affirmative consent from its customers prior to processing transactions that will result in overdraft fees;

      c.     Does not alert its customers that a withdrawal transaction will trigger an overdraft fee, and does not provide its customers with an opportunity to cancel such transactions;

      d.     Manipulates and reorders transactions so that it can increase the number of overdraft fees it imposes;

      e.     Manipulates and reorders withdrawals from highest to lowest in order to maximize the number of overdrafts and, consequently, the amount of overdraft fees;

      f.     Imposes overdrafts and overdraft fees when, but for reordering transactions, there would otherwise be sufficient funds in the account;

      g.     Fails to provide customers with accurate balance information;

      h.     Delays posting of transactions, including deposits and debits, so that customers are charged overdraft fees on transactions, even though the customers had sufficient funds in their accounts to cover the transactions upon execution;

      i.     Bounces checks and/or refuses to pay transactions which otherwise would have been paid if the transactions were posted in

chronological order. Flagstar damages consumers' relationships with other institutions subjecting them to (1) additional fees (the payee also charges when a check is returned for Non-Sufficient funds), (2) restrictions and sanctions, (3) loss of the privilege of making payments online, (4) "floating" payments (funds are not made available to consumer for up to eight business days), etc.;

j.      Charges exorbitant overdraft fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions;

k.      Breaches its covenant of good faith and fair dealing with Plaintiffs and other members of the Class through its overdraft policies and practices;

l.      Requires its customers to enter into standardized account agreements which include unconscionable provisions;

m.      Converts moneys belonging to Plaintiffs and other members of the Class through its overdraft policies and practices;

n.      Is unjustly enriched through its overdraft policies and practices; and

o.      Violates the consumer protection act of Michigan through its overdraft policies and practices.

24.    Other questions of law and fact common to the Class include:

a.      The proper method or methods by which to measure damages, and

b.      The declaratory relief to which the Class is entitled.

25.    Plaintiffs' claims are typical of the claims of other Class members, in that

they arise out of the same wrongful overdraft policies and practices and the same

or substantially similar unconscionable provisions of Flagstar Bank's account

agreements and other related documents. Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other Class member.

26.    Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions.

27.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Flagstar Bank, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Flagstar Bank's misconduct will proceed without remedy.

28.    Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.   Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which  might  otherwise go  unheard  because  of  the  relative  expense  of  bringing  individual lawsuits,

and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

### A.    Flagstar Bank

29.    Flagstar Bank is in the business of providing its customers with a variety of banking services.  One of the services provided by Flagstar Bank for customers who open a checking account is the ability to make electronic withdrawal transactions. For example, a customer has the ability, through an electronic check, to pay a bill online through funds in the customer's Flagstar Bank checking account. As a result, Flagstar Bank is notified instantaneously when the transaction is processed, and has the option to accept or decline transactions at such time.

30.    Based upon information and belief, Flagstar Bank employs sophisticated software to automate its overdraft system. This program maximizes the number of overdrafts, and thus, the amount of overdraft fees charged per customer.

31.    As a result of Flagstar Bank's manipulation and alteration of customers' transactions records, funds in a customer's account are depleted more rapidly and more overdraft fees are likely to be charged for multiple smaller transactions. Indeed, overdraft charges are likely to occur at times when, but for the manipulation and alteration, there would be funds in the account and no overdraft would occur.  For example, if a customer, whose account has a $50 balance  at  the

time Flagstar Bank processed several transactions, made four transactions of $10 and one subsequent transaction of $100 on the same day, the Bank would reorder the debits from largest to smallest, imposing four overdraft fees on the customer. Conversely, if the $100 transaction were debited last—consistent with the actual order of transactions—only one overdraft fee would be assessed.

## B.    Flagstar Bank's Relevant Customer Documents Regarding Overdrafts

32.    Plaintiffs and all members of the Class maintain or maintained a checking account with Flagstar Bank. The terms of Flagstar Bank's checking accounts are contained in standardized account holder agreements, presented to its customers on a "take it or leave it" basis, drafted and imposed by Flagstar Bank, which was the party of vastly superior bargaining strength, and thus constitute agreements of adhesion. A representative copy of the "Terms and Conditions and Disclosure Guide" (the "Deposit Agreement"), covering customers maintaining accounts in Michigan, which is 37 pages long, single-spaced and in small font, is attached as **Exhibit B**.

33.    The Deposit Agreement states that ("We process checks and similar items second–in the order in which they are received for the business day on which they are processed." (p. 9, emphasis added).

34.    The Deposit Agreement also states that "There is a combined limit of five Non-Sufficient Funds Charges per business day."  *Id.* at 20. This is contrary to

Flagstar Bank's actual policy of frequently assessing customers more than five NSF charges per day.

**C.    Flagstar Bank's Re-Ordering of Checking Account Transactions**

35.    In an effort to maximize overdraft revenue, Flagstar Bank manipulates and reorders debit transactions from highest to lowest during given periods of time. Flagstar Bank's reorders transactions for no reason other than to increase the number of exorbitant overdraft fees it can charge. This practice violates numerous consumer protection laws and the covenant of good faith and fair dealing in the Flagstar Bank Deposit Agreement.

36.    In addition, Flagstar Bank misleads its customers regarding its reordering practices.  Instead of unequivocally telling its customers that it will reorder debits from highest to lowest, the Bank states in its contract that they process checks in the order in which they are received for the business day on which they are processed. This statement is deceptive and/or unfair because it is, in fact, Flagstar Bank's practice to *always* reorder debits from highest to lowest. Flagstar Bank's practices thus violate the covenant of good faith and fair dealing implied in the Bank Deposit Agreement as well as the consumer protection laws of Michigan.

37.    Transactions involving electronic checks used by Flagstar Bank's customers are processed electronically. As a result, Flagstar Bank is notified instantaneously

when the customer's account is being debited and has the option to accept or decline these transactions.

38. Notwithstanding the instantaneous nature of these electronic debit transactions, under Flagstar Bank's posting system, it fails to post charges in the order in which they are assessed or received. Flagstar Bank developed a policy and employs a practice whereby account charges and debits are posted to its customers' accounts out of chronological order for the sole purpose of maximizing the number of overdraft transactions and, therefore, the amount of overdraft fees charged to its customers.

39. Instead of processing such transactions in chronological order, Flagstar Bank processes them starting with the largest debit and ending with the smallest debit, so as to generate the largest possible number of overdrafts and the greatest possible amount of overdraft fees.

40. Flagstar Bank refrains from immediately posting charges to a customer's account as it receives them—sometimes for multiple business days. By holding charges rather than posting them immediately to an account, Flagstar Bank is able to amass a number of charges on the account. Subsequently, Flagstar Bank posts all of the amassed charges on a single date. When the group of charges is eventually posted to the customer's account, Flagstar Bank posts them in order of largest to smallest—not in the order in which they were received or in the order

in which they were charged. This delayed posting results in the imposition of multiple overdraft fees that would not otherwise be imposed. The delayed posting also prevents customers from ascertaining the accurate balances in their accounts.

41.   Flagstar Bank's policy and practice of posting charges from largest to smallest, rather than chronologically, or from smallest to largest, is specifically designed to maximize the generation of overdraft fees by triggering overdraft fees for account charges that would not otherwise result in such fees.

42.   Flagstar Bank enforces an unconscionable policy whereby charges assessed are posted to customers' accounts in a non-chronological order, from highest to lowest, and are held for multiple days and then batched together, to maximize the number of overdraft transactions and fees. Flagstar Bank's processing practices substantially increase the likelihood that customers' smaller charges will result in multiple overdraft fees.  The practices provide Flagstar Bank with substantially higher service fee revenues than it would otherwise achieve absent these practices.

43.   As a result, Plaintiffs and members of the Class have been assessed overdraft fees for transactions which occurred when they actually had sufficient funds in their accounts to cover those transactions.

**D.**   **Flagstar Bank's Cloaking of Accurate Balance Information**

44.    Flagstar Bank actively promotes the convenience of its electronic debiting, but fails to provide customers with accurate balance information. When customers execute account transactions, they generally do not have access to an accurate balance register or balance information.

45.    Flagstar Bank provides inaccurate balance information to its customers through its electronic network. In certain cases, Flagstar Bank informs its customers that they have a positive balance when, in reality, they have a negative balance, despite the Bank's actual knowledge of outstanding debits and transactions.

46.    Even when Flagstar Bank has actual knowledge of outstanding transactions which have already created a negative balance in a customer's account, it encourages the customer to incur more overdraft charges by approving— rather than prudently declining— subsequent debit card purchases and other electronic transactions.

47.    Flagstar Bank also assesses overdraft fees at times when actual funds in the customer account are sufficient to cover all debits that have been submitted to the Bank for payment. It does this by placing a "hold" on actual funds in the customer's account. In doing so, Flagstar Bank charges overdraft fees where it faces no risk, because the cash balance in the customer's account has not dropped below zero.

### E.   Flagstar Bank's Failure to Notify Customers of Overdrafts or Advise Customers of Their Right to Opt Out

48.    At the time its electronic checks are used, Flagstar Bank is able to determine, almost instantaneously, whether there are sufficient funds in a customer's account to cover that particular transaction. The Bank has the technological capability to decline transactions (which it does when a pending transaction would exceed a pre-determined, overdraft tolerance limit for the account), or notify customers at that very moment that the particular debit transaction would result in an overdraft. Flagstar Bank could give customers the option to decline the transaction to avoid incurring the overdraft fee, but it does not do so because it seeks to maximize the amount of revenue generated through its assessment of overdraft fees.

49.    Notwithstanding its technological capabilities and actual knowledge, Flagstar Bank fails to provide notice to Plaintiffs and the Class that a particular debit transaction will result in an overdraft and, hence, an overdraft fee. Because Flagstar Bank's customers are not notified of the potential overdraft, and are not given the option of declining the transaction or providing another form of payment, the customers are assessed monetary damages in the form of overdraft fees.

50.     Flagstar Bank fails to make Plaintiffs and Class members aware that they can opt out of its overdraft scheme upon request, thereby avoiding any overdraft fees from being charged.

**F.      Flagstar Bank's Overdraft Policies and Practices Are Contrary to Best Practices**

51.     By engaging in the conduct described herein, Flagstar Bank has failed to follow the list of "best practices" for overdraft programs set forth in the "Joint Guidance on Overdraft Protection Programs" ("Joint Guidance") issued by the United States Department of the Treasury, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and the National Credit Union Administration (collectively, the "Agencies"). A copy of the Joint Guidance is attached as **Exhibit C**. These "best practice" recommendations include: "Provide election or opt-out of service.  Obtain affirmative consent of consumers to receive overdraft protection. Alternatively, where overdraft protection is automatically provided, permit consumers to 'opt-out' of the overdraft program and provide a clear consumer disclosure of this option."   70 F.R. 9127-01, 9132.

52.     According to rules proposed by the Agencies: "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the

case for electronic check debit transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee." 73 F.R. 28904-01, 28929 (May 19, 2008).

53.    The Joint Guidance also advises banks to "[a]lert customers before a transaction triggers any fees. When consumers attempt to withdraw or transfer funds made available through an overdraft protection program, provide a specific consumer notice, where feasible, that completing the withdrawal may trigger the overdraft fees." 70 F.R.D. 9127, 9132. The Joint Guidance further advises that "[t]his notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice." *Id.*

54.    Similarly, the list of "best practices" recommended in "Overdraft Protection: A Guide for Bankers," issued by the American Bankers Association, includes offering customers the option of "opting out" of any overdraft programs, and informing customers, before they access funds, that a particular transaction will cause them to incur an overdraft fee. A copy of "Overdraft Protection: A Guide for Bankers" is attached as **Exhibit D**.

55.    Flagstar Bank's overdraft policies make it difficult for customers to avoid injury even if they carefully track the balance in their account. In fact, the Agencies have stated that "Injury" resulting from such policies, "is not reasonably

avoidable" by the consumer. 73 F.R. 28904-01, 28929. "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out. Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account. For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."

### G.     **Flagstar Bank's Unconscionable Provisions and Policies**

56.     Flagstar Bank's overdraft policies and practices are unconscionable in the following respects, among others:

> a.      The Bank does not disclose or reasonably disclose to customers that  they have the option to "opt out" of the Bank's overdraft scheme;

> b.      The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that will overdraw the account and result in an overdraft fee;

> c.      The Bank does not alert its customers that a debit transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

> d.      The Deposit Agreement and related documents, including the  Fee Schedule and Card Agreement, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only

relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety; and

e.     The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank reorders debits from high to low, even though Flagstar Bank always reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

## H.    Flagstar Bank's Overdraft Practices Harmed Plaintiffs

57.    Flagstar Bank's wrongful overdraft policies and practices described above harmed Plaintiffs and members of the Class. The following allegations regarding certain of the named plaintiffs are made for purposes of illustrating the harm and damage sustained by Plaintiffs and members of the Class as a result of Flagstar Bank's wrongful overdraft policies and practices.

58.    Plaintiff James Lossia Jr. is a current or former checking account customer of Flagstar Bank.

59.    On or about March 2, 2015, Mr. Lossia had a balance in his Flagstar Bank Checking account of approximately $3,925.99. Mr. Lossia attempted to make the following electronic check debit transactions from his account on the same day in the following order:

| (1) $100.00 to DISCOVER DC PYMNTS DCIINTNET |
| (2) $185.71 to BARCLAYCARD US - CREDITCARD |
| (3) $200.00 to DISCOVER DC PYMNTS DCIINTNET |
| (4) $200.00 to CHASE - EPAY. |
| (5) $200.00 CITI CARD ONLINE - PAYMENT. |

| | |
|---|---|
| (6) $200.00 to CHASE - EPAY. | |
| (7) $450.00 to USAA.COM PAYMNT ACH PAYMENTS | |
| (8) $500.00 to AMEX EPayment ER AM - ACH PMT | |
| (9) $500.00 to CHASE - EPAY. | |
| (10) $2,825.00 to GOOGLE GOOGLE.COM/CH - WALLET/TOP. | |
| See copies of statements attached as **Exhibit E**. | |

60.     Flagstar Bank wrongfully charged Mr. Lossia overdraft fees on multiple occasions.  By way of illustration, Mr. Lossia was charged eight overdraft fees on March 2, 2015, in the amount of $36.00 each, for a total of $288.00. Based on information and belief, the overdraft fees were based on the following ordering of transactions:

| | |
|---|---:|
| Beginning Balance | $3,925.99 |
| (1st) $2,825.00 to GOOGLE GOOGLE.COM/CH - WALLET/TOP. | $1,100.99 |
| (2nd) $500.00 to AMEX EPayment ER AM - ACH PMT | $600.99 |
| (3rd) $200.00 to CHASE - EPAY. | $400.99 |
| (4th) $450.00 to USAA.COM PAYMNT ACH PAYMENTS | -$49.01 |
| Withdrawal Paid and NSF Fee Assessed | -$85.01 |
| (5th) $500.00 to CHASE - EPAY. | |
| Rejected and NSF Fee Assessed | -$121.01 |
| (6th) $200.00 to CHASE - EPAY. | |
| Withdrawal Paid and NSF Fee Assessed | -$357.01 |
| (7th) $200.00 CITI CARD ONLINE - PAYMENT. | |
| Rejected and NSF Fee Assessed | -$393.01 |
| (8th) $100.00 to DISCOVER DC PYMNTS DCIINTNET | |
| Withdrawal Paid and NSF Fee Assessed | -$529.01 |
| (9th) $200.00 to DISCOVER DC PYMNTS DCIINTNET | |
| Rejected and NSF Fee Assessed | -$565.01 |
| (10th) $185.71 to BARCLAYCARD US - CREDITCARD | |
| Rejected and NSF Fee Assessed | -$601.01 |

61.    There was also a $36 NSF fee assessed on a physical check for $40.00, (Check 102) see **Exhibit E**.

62.    In an effort to extract the largest possible number of NSF fees from Plaintiffs, Flagstar Bank cunningly disregarded the actual ordering of the transactions and reordered the transactions to debit the $2,825.00 payment made to Google Wallet first when it in fact was presented last.

63.    If Flagstar Bank had not manipulated and reordered Mr. Lossia's transactions from highest to lowest he would not have been assessed eight overdraft fees.

64.    For instance, if Flagstar Bank had posted the transactions from lowest to highest, Mr. Lossia would have been assessed only one overdraft fee instead of eight:

| | |
|---|---|
| Beginning Balance | $3,925.99 |
| (1st) $100.00 to DISCOVER DC PYMNTS DCIINTNET | $3,825.99 |
| (2nd) $185.71 to BARCLAYCARD US - CREDITCARD | $3,640.28 |
| (3rd) $200.00 to CHASE - EPAY. | $3,440.28 |
| (4th) $200.00 to CHASE - EPAY. | $3,240.28 |
| (5th) $200.00 CITI CARD ONLINE - PAYMENT. | $3,040.28 |
| (6th) $200.00 to DISCOVER DC PYMNTS DCIINTNET | $2,840.28 |
| (7th) $450.00 to USAA.COM PAYMNT ACH PAYMENTS | $2,390.28 |
| (8th) $500.00 to CHASE - EPAY. | $1,890.28 |
| (9th) $500.00 to AMEX EPayment ER AM - ACH PMT | $1,390.28 |
| (10th) $2,825.00 to GOOGLE GOOGLE.COM/CH - WALLET/TOP. | |
| If Rejected and NSF Fee Assessed | $1,354.28 |
| If Paid and NSF Fee Assessed | -$1,470.72 |

65.    Likewise, if Flagstar Bank had posted the transactions in chronological order, Mr. Lossia would have been assessed only one overdraft fee instead of eight:

| | |
|---|---|
| Beginning Balance | $3,925.99 |
| (1st) $100.00 to DISCOVER DC PYMNTS DCIINTNET | $3,825.99 |
| (2nd) $185.71 to BARCLAYCARD US - CREDITCARD | $3,640.28 |
| (3rd) $200.00 to DISCOVER DC PYMNTS DCIINTNET | $3,440.28 |
| (4th) $200.00 to CHASE - EPAY. | $3,240.28 |
| (5th) $200.00 CITI CARD ONLINE - PAYMENT. | $3,040.28 |
| (6th) $200.00 to CHASE - EPAY. | $2,840.28 |
| (7th) $450.00 to USAA.COM PAYMNT ACH PAYMENTS | $2,390.28 |
| (8th) $500.00 to AMEX EPayment ER AM - ACH PMT | $1,890.28 |
| (9th) $500.00 to CHASE - EPAY. | $1,390.28 |
| (10th) $2,825.00 to GOOGLE GOOGLE.COM/CH - WALLET/TOP. | |
| If Rejected and NSF Fee Assessed | $1,354.28 |
| If Paid and NSF Fee Assessed | -$1,470.72 |

66.    Plaintiff Alexandra Plapcianu is a current or former checking account customer of Flagstar Bank.

67.    In addition, Flagstar Bank placed Plaintiff James Lossia's account with a collection agency to attempt to collect the wrongfully assessed NSF fees. See collection agency correspondence and statements attached as **Exhibit F**.

68.    Plaintiff Alexandra Plapcianu is listed on the same Flagstar Bank checking account as Plaintiff James Lossia Jr. and has likewise been the subject of the same unfair practices of Flagstar Bank.

69.    Flagstar Bank failed to notify any of these Plaintiffs that they could be assessed overdraft fees on transactions even though there were sufficient funds in

the checking account to cover the transaction at the time the transaction was executed. In addition, Flagstar Bank never notified these Plaintiffs, at the time they executed the purported insufficient funds transactions described above, that their checking account were overdrawn or that they would be charged an overdraft fee as a result of the transactions. Furthermore, Flagstar Bank paid, rather than returned, several of the debit card charges described above, even though Plaintiffs' accounts purportedly lacked sufficient funds to cover the transactions.

70.    The overdraft charges assessed by Plaintiffs are representative of millions of dollars of overdraft fees that Flagstar Bank wrongfully assessed and deducted from its customers' accounts.

## I.    **The Damages Sustained by Plaintiffs and the Class**

71.    As shown by these examples, Flagstar Bank's overdraft policies make it difficult for a customer to avoid injury even if the customer keeps close track of the balance in his or her account. In fact, the Agencies have stated that "injury" resulting from such policies "is not reasonably avoidable" by consumers. 73 F.R. 28904-01, 28929. "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out. Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.    For example, a

consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available." *Id.*

72. According to rules proposed by the Agencies, "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the case for electronic debit transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee." 73 F.R. 28904-01, 28929 (May 19, 2008).

73. Thus, as a consequence of Flagstar Bank's overdraft policies and practices, Plaintiffs and the Class have been wrongfully forced to pay overdraft fees. Flagstar Bank has improperly deprived Plaintiffs and the Class of significant funds, causing ascertainable monetary losses and damages.

74. As a consequence of Flagstar Bank's improper overdraft fees, Flagstar Bank has wrongfully deprived Plaintiffs and the Class of funds to which it had no legitimate claim.

75. Plaintiffs had sufficient funds to cover at least some of the transactions for which they and the Class were charged overdraft fees. Plaintiffs and members of the Class either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn, even by *de minimis* margins, exclusively so that Flagstar Bank could impose these wrongful charges.

In many instances, Flagstar Bank's manipulation of the process for imposing overdraft fees triggered a cascade of charges that exponentially added to the charges it collected from Plaintiffs and Class members.

76. All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

**J.** **Damage to Plaintiffs' Credit in Violation of Fair Credit Reporting Act**

77. On or about July 16, 2015, Plaintiffs applied for credit through Lake Michigan Credit Union and were denied. See attached Notice from Lake Michigan Credit Union denying Plaintiffs application for credit attached as **Exhibit G**.

78. Plaintiffs were denied credit due to the inaccurate information furnished by Flagstar to CHEXSYSTEMS, a consumer reporting agency. **Exhibit G**.

79. Upon information and belief, Plaintiffs have suffered further harm as a result of Flagstar Bank's practice of reordering debit transactions from chronological order to a high-to-low order by way of damage to their credit.

80. Upon information and belief, Plaintiffs' checking account was placed in collections and false information was furnished to consumer reporting agencies as a result of the NSF fees assessed to their Flagstar Bank checking account.

81. Upon information and belief, Flagstar Bank frequently furnishes inaccurate information to consumer reporting agencies by reporting that customers did not

have sufficient funds in their checking accounts when the customers did in fact have sufficient funds.

82.   Upon information and belief, Flagstar Bank's practice of reordering transactions from high-to-low to cause customers to incur as many NSF fees as possible harms consumers since Flagstar Bank subsequently reports such information to consumer reporting agencies.

83.   It is due to Flagstar Bank's practice of reordering transactions that this inaccurate information is furnished to consumer reporting agencies causing Plaintiffs and members of the Class harm to their credit scores.

84.   Upon information and belief, at the time the information was reported to consumer reporting agencies, Flagstar Bank knew that it was furnishing inaccurate information.

85.   Upon information and belief, Flagstar Bank, with respect to Plaintiffs' checking account, has failed to correct and/or update the false information provided to consumer reporting agencies in violation of 15 U.S.C. § 1681s-2.

### FIRST CLAIM FOR RELIEF
### Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

86.   Plaintiffs repeat paragraphs 1 through 85 above.

87.    Plaintiffs and Flagstar Bank have contracted for bank account deposit, checking, ATM and debit card services, as embodied in Flagstar Bank's Deposit Agreement and related documentation.

88.    Under the laws of Michigan, where Flagstar Bank does business, good faith is an element of every contract pertaining to the assessment of overdraft fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

89.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

90.     Flagstar Bank has breached the covenant of good faith and fair dealing in the Deposit Agreement through its overdraft policies and practices as alleged herein.

91.     Plaintiffs and the Class have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement.

92.     Plaintiffs and members of the Class have sustained damages as a result of Flagstar Bank's breach of the covenant of good faith and fair dealing.

## SECOND CLAIM FOR RELIEF
### Unconscionability

93.     Plaintiffs repeat paragraphs 1 through 92 above.

94.     Flagstar Bank's overdraft policies and practices are substantively and procedurally unconscionable in the following respects, among others:

a.     The Bank does not disclose or reasonably disclose to customers that they have the option to "opt out" of the Bank's overdraft scheme;

b.     The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that will overdraw the account and result in an overdraft fee;

c.     The Bank does not alert its customers that a debit transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

d.     The Deposit Agreement is a contract of adhesion in that it is a standardized form, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to it or reject the agreement in its entirety; and

e.  The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank reorders debits from high to low, even though Flagstar Bank always reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

95.  Considering the great business acumen and experience of Flagstar Bank in relation to Plaintiffs and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

96.  The imposition of overdraft charges which exceed the amount overdrawn (e.g., the imposition of a $36 charge on an overdraft of less than $36) is itself unconscionable. Such charges are not reasonably related to the Bank's cost of covering the overdraft and/or its risk of nonpayment (where the Bank pays the overdraft), or to the Bank's cost of returning the item unpaid (where the Bank does not pay the overdraft).

97.  Plaintiffs and members of the Class have sustained damages as a result of Flagstar Bank's unconscionable policies and practices as alleged herein.

### THIRD CLAIM FOR RELIEF

## Conversion

98.    Plaintiffs repeat paragraphs 1 through 97 above.

99.    Flagstar Bank had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

100.   Flagstar Bank has wrongfully collected overdraft fees from Plaintiffs and the members of the Class, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

101.   Flagstar Bank has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the Class, without legal justification.

102.   Flagstar Bank continues to retain these funds unlawfully without the consent of Plaintiffs or members of the Class.

103.   Flagstar Bank intends to permanently deprive Plaintiffs and the members of the Class of these funds.

104.   These funds are properly owned by Plaintiffs and the members of the Class, not Flagstar Bank, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiffs and the members of the Class.

105.   Plaintiffs and the members of the Class are entitled to the immediate possession of these funds.

106.   Flagstar Bank has wrongfully converted these specific and readily identifiable funds.

107.   Flagstar Bank's wrongful conduct is continuing.

108.   As a direct and proximate result of this wrongful conversion, Plaintiffs and  the members of the Class have suffered and continue to suffer damages.

109.   By reason of the foregoing, Plaintiff and the members of the Class are entitled to recover from Flagstar Bank all damages and costs permitted by law, including all amounts that Flagstar Bank has wrongfully converted.

<div align="center">

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
</div>

110.   Plaintiffs repeat paragraphs 1 through 109 above.

111.   Plaintiffs, on behalf of themselves and the Class, assert a common law claim for unjust enrichment.

112.   By means of Flagstar Bank's wrongful conduct alleged herein, Flagstar Bank knowingly provides banking services to Plaintiffs and members of the Class that are unfair, unconscionable, and oppressive.

113.   Flagstar Bank knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Class. In so doing, Flagstar Bank acted with conscious disregard for the rights of Plaintiffs and members of the Class.

114.   As a result of Flagstar Bank's wrongful conduct as alleged herein, Flagstar Bank has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

115.   Flagstar Bank's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

116.   Under the common law doctrine of unjust enrichment, it is inequitable for Flagstar Bank to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of overdraft fees on Plaintiffs and members of the Class in an unfair, unconscionable, and oppressive manner. Flagstar Bank's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

117.   The financial benefits derived by Flagstar Bank rightfully belong to Plaintiffs and members of the Class. Flagstar Bank should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by them.  A   constructive   trust should  be  imposed  upon  all wrongful  or  inequitable  sums  received  by Flagstar Bank traceable  to  Plaintiffs  and the members of the Class.

118.   Plaintiffs and members of the Class have no adequate remedy at law.

<u>**FIFTH CLAIM FOR RELIEF**</u>
<u>**Violations of Michigan Consumer Protection Laws**</u>

119.   Plaintiffs repeat paragraphs 1 through 118 above.

120.   Flagstar Bank engages in unfair business practices relating to the imposition of overdraft fees on consumers, in violation of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901, *et seq.*

121.   Flagstar Bank is committing, *inter alia*, the following "Unfair, unconscionable, or deceptive methods, acts, or practices" as defined by Mich. Comp. Laws § 445.903:

> (f) Disparaging the goods, services, business, or reputation of another by false or misleading representation of fact.

> (g) Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented.

> (n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

> (o) Causing a probability of confusion or of misunderstanding as to the terms or conditions of credit if credit is extended in a transaction.

> (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

> (y) Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

> (z) Charging the consumer a price that is grossly in excess of the price at which similar property or services are sold.

122.   As redress for Flagstar Bank's repeated and ongoing violations of these consumer protection statutes, Plaintiffs and the Class are entitled to, *inter alia*, damages and declaratory relief.

## SIXTH CLAIM FOR RELIEF
## Violations of Federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

123.   Plaintiffs repeat paragraphs 1 through 122 above.

124.   Upon information and belief, Flagstar Bank is a furnisher of information to consumer reporting agencies as defined in 15 U.S.C. § 1681 *et seq*.

125.   Upon information and belief, Flagstar Bank's practice of reordering transactions from high-to-low to cause customers to incur as many NSF fees as possible harms consumers since Flagstar Bank subsequently reports such information to consumer reporting agencies.

126.   Upon information and belief, Flagstar Bank frequently furnishes inaccurate information to consumer reporting agencies by reporting that customers did not have sufficient funds in their checking accounts when the customers did in fact have sufficient funds.

127.   Upon information and belief, Plaintiffs' account was placed in collections and false information was furnished to consumer reporting agencies as a result of the NSF fees assessed to their Flagstar Bank checking account.

128.   Plaintiffs have suffered harm as a result of Flagstar Bank's practice of reordering debit transactions from chronological order to a high-to-low order by way of damage to their credit.

129.   Upon information and belief, at the time the information was reported to consumer reporting agencies, Flagstar Bank knew that it was furnishing inaccurate information.

130.   Upon information and belief, Flagstar Bank, with respect to Plaintiffs' checking account, has failed to correct and/or update the false information provided to consumer reporting agencies in violation of 15 U.S.C. § 1681s-2.

131.   It is due to Flagstar Bank's practice of reordering transactions that this inaccurate information is furnished to consumer reporting agencies causing Plaintiffs and members of the Class harm to their credit.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class demand a jury trial on all claims so triable and judgment as follows:

1.   Declaring Flagstar Bank's overdraft fee policies and practices to be wrongful, unfair and unconscionable;

2.   Restitution of all overdraft fees paid to Flagstar Bank by Plaintiffs and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

3.   Disgorgement of the ill-gotten gains derived by Flagstar Bank from its misconduct;

4.   Actual damages in an amount according to proof;

5.     Punitive and exemplary damages;

6.     Pre-judgment interest at the maximum rate permitted by applicable law;

7.     Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

8.     Ordering Defendant Flagstar Bank to correct the inaccurate information, pertaining to Plaintiffs' checking account, reported to consumer reporting agencies.

9.     Such other relief as this Court deems just and proper.

<div style="margin-left: 40%;">

Respectfully Submitted,

/s/  Ronald G. Acho
Ronald G. Acho (P-23913)
CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C.
Attorneys for **Plaintiffs**
33900 Schoolcraft Road
Livonia, MI 48150
(734) 261-2400
acho@cmda-law.com
</div>

Date: July 16, 2015

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

JAMES LOSSIA JR, and ALEXANDRA
PLAPCIANU, *Individually and on*
*behalf of others similarly situated,*

    Plaintiffs,

v.             Case No.
              Hon.
              CLASS ACTION SUIT

FLAGSTAR BANCORP, INC.
aka FLAGSTAR BANK,

    Defendant.

_____/

**CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.**
BY:  RONALD G. ACHO (P 23913)
Attorney for Plaintiffs
33900 Schoolcraft Road
Livonia, MI  48150
734-261-2400
racho@cmda-law.com

_____/

**<u>JURY DEMAND</u>**

  Plaintiffs, through undersigned counsel, demands a trial by jury.

      Respectfully Submitted,

      <u>/s/  Ronald G. Acho</u>
      Ronald G. Acho (P-23913)
      CUMMINGS, MCCLOREY, DAVIS & ACHO, P.L.C.
      Attorneys for **Plaintiffs**
Date: July 16, 2015  33900 Schoolcraft Road
      Livonia, MI 48150
      (734) 261-2400
      acho@cmda-law.com