UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES LOSSIA, JR. and
ALEXANDRA PLAPCIANU,
individually and on behalf of
others similarly situated,

               Plaintiffs,

                                                    Case No. 15-12540

vs.

                                                    HON. GEORGE CARAM STEEH

FLAGSTAR BANCORP, INC.,
a/k/a FLAGSTAR BANK,

               Defendant.
_____/

ORDER GRANTING IN PART DEFENDANT'S
MOTION TO DISMISS STATE LAW CLAIMS [DOC. 11]

      Plaintiffs James Lossia Jr. and Alexandra Plapcianu filed this proposed class action lawsuit against Flagstar Bank alleging five state law claims and one federal claim. The case previously came before the court on defendant's motion to dismiss the federal claim brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., which alleges that Flagstar Bank furnished false information to consumer reporting agencies as a result of insufficient fund ("NSF") fees assessed by Flagstar. The court granted defendant's motion to dismiss without prejudice, and gave plaintiffs an opportunity to file an amended complaint. Plaintiffs filed their amended complaint on November 19, 2015. Defendant then filed a motion to dismiss the five state law claims, which is presently before the court. The court does not believe that it would benefit

from oral argument, and so informed the parties that it would make a determination on the briefs, pursuant to L.R. 7.1(f)(2).

## FACTUAL BACKGROUND

Plaintiffs are Flagstar customers who maintain or maintained a checking account with Flagstar pursuant to Flagstar's Terms and Conditions and Disclosure Guide (the "Deposit Agreement"). Plaintiff contend that "[i]n an effort to maximize overdraft revenue, defendant manipulates and reorders debit transactions from highest to lowest during given periods of time." (Doc. 14, Pg ID 650). According to plaintiffs, while defendant's contract with its account holders states that it processes checks in the order in which they are received for the business day on which they are processed, defendant's actual practice is to always reorder debits from highest to lowest. The five state law claims in plaintiffs' First Amended Class Action Complaint ("FAC") - breach of contract and breach of the covenant of good faith and fair dealing, unconscionability, conversion, unjust enrichment and violations of Michigan Consumer Protection Laws - focus on the alleged manipulation and re-ordering of electronic check transactions.

## ANALYSIS

I. Dismissal Standard

Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. "'[N]aked assertion[s]' devoid of 'further factual

enhancement'" are insufficient to "state a claim to relief that is plausible on its face". *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557, 570). To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555) (other citations omitted). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1051 (6th Cir. 2011) (*citing Twombly*, 550 U.S. at 555).

II. Breach of Contract

Plaintiffs acknowledge that Michigan does not recognize an independent tort action for an alleged breach of a contract's implied covenant of good faith and fair dealing, and elect to pursue only their claim for breach of contract. The elements of a breach of contract claim are "(1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *AFT Michigan v. Michigan*, 303 Mich. App. 651, 660 (2014) (citation omitted).

The "Common Factual Allegations" section of the complaint refers to the Deposit Agreement, and points to specific provisions including: "[w]e process checks and similar items second - in the order in which they are received for the business day on which they are processed" and "[t]here is a combined limit of five Non-Sufficient Funds Charges per business day." (FAC ¶¶ 33, 34). The complaint then explains that these

are contrary to Flagstar's actual policies of assessing customers more than five NSF charges per day, and manipulating and reordering debit transactions in order to maximize overdraft revenue.  (FAC ¶¶ 34, 35).

However, in the Claims section of the complaint, the only reference to a claim for breach of contract is in the caption for Count One - "Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing." (Doc. 10, Page ID 334).  Count One first alleges that plaintiffs and defendant contracted for services, citing to "Flagstar Bank's Deposit Agreement and related documentation." (FAC ¶ 104).  The remainder of the allegations address defendant's duty of good faith and fair dealing, and its breach of the same.  Even the damages allegation states that plaintiffs "have sustained damages as a result of Flagstar Bank's breach of the covenant of good faith and fair dealing." (FAC ¶ 109).  Other than the caption, there is nothing in the First Amended Complaint that puts defendant on notice that it must defend against a claim of breach of contract.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  It is not up to the defendant or the court to make plaintiffs' claim for them.  In this case, Count One might be titled Breach of Contract, but it only alleges a claim for breach of the covenant of good faith and fair dealing.

The court holds that plaintiffs have failed to state a valid claim for breach of contract.  However, given that defendant did not challenge the breach of contract claim in its first motion to dismiss, and that the factual allegations of the complaint allude to

contract provisions that plaintiffs' breach of contract claim might be based upon, the court will give plaintiff an opportunity to amend its breach of contract count.

III. Unconscionability

Count Two asserts that plaintiffs are entitled to damages because defendant's "overdraft policies and practices are substantively and procedurally unconscionable". (FAC ¶¶ 111, 114). Defendant moves to dismiss this count on the basis that unconscionability is a defense to contractual enforcement rather than an affirmative claim. Under Michigan law, a court may invalidate a contract that is determined to be unconscionable. Courts may even invalidate commercial contracts due to unconscionability. *See e.g., Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264 (E.D. Mich. 1976). However, unconscionability is not a separate cause of action. Rather, it is a defense to enforcement of a contract. *See Newman v. Roland Machinery Co.*, 2009 WL 3258319, *10-11 (W.D. Mich. Oct. 8, 2009) (A plain reading of M.C.L. § 440.2302(1)-(2) indicates that it is to be used for protection against enforcement and not as an affirmative action for damages.) Thus, plaintiff cannot maintain a claim based on unconscionability. *Tamlin v. Citi Mortgage Servicing*, 2011 WL 2580656, at *4 (E.D. Mich. June 29, 2011).

Plaintiffs respond that they are pursuing a defense to the enforcement of the Deposit Agreement terms regarding overdraft fees. However, it is clear from the complaint that plaintiffs are seeking damages "as a result of Flagstar's unconscionable policies and practices." (FAC ¶ 114). While defendant might have imposed overdraft fees on plaintiffs pursuant to terms of the parties' contractual agreement, defendant has

not brought an action to enforce its contractual agreement to which plaintiffs may assert an unconscionability defense. Defendant's motion to dismiss Count Two is granted.

IV. Conversion

Under Michigan law, "an action cannot be maintained for conversion of money unless the money was obtained without the owner's consent to the creation of a debtor and creditor relationship." *Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.*, 178 Mich. App. 570, 575 (1989). Plaintiffs admittedly consented to the creation of a debtor-creditor relationship with defendant by maintaining a checking account, entering into an account agreement and depositing money into their accounts. Plaintiffs' argument for stating a conversion claim is that the overdraft fees were drawn on a negative balance in their accounts, as opposed to being drawn from funds that had already been deposited in the accounts. (Doc. 14, Page ID 660-661). As a result, plaintiffs contend that they did not consent to a debtor-creditor relationship regarding the monies on which the fees were assessed. However, the proper focus of the consent is not the particular monies deposited, but the intent to form a debtor-creditor relationship by depositing money with the bank. *See Id.*

Plaintiffs contend that they have successfully pled a tort duty, separate and distinct from defendant's contractual obligations in this case. Specifically, plaintiffs point to a general common law duty to use due care to prevent the diminishment of plaintiffs' checking accounts through its own wrongful acts. (FAC § 116). However, "a tort action will not lie when based solely on the nonperformance of a contractual duty." *Fultz v. Union-Commerce Assocs.*, 470 Mich. 460, 466 (2004). Plaintiffs' conversion claim alleges that defendant wrongfully collected overdraft fees, and exercised a right of

ownership over plaintiffs' funds without proper authorization. (FAC §§ 117-118). This claim rests on duties that arise under the parties' contract rather than any independent duties arising outside the parties' contractual relationship.

Therefore, defendant's motion to dismiss Count Three is granted.

V. Unjust Enrichment

In order to allege an unjust enrichment claim, "a plaintiff must demonstrate (1) the defendant's receipt of a benefit from the plaintiff and (2) an inequity to plaintiff as a result." *AFT Mich. v. Michigan*, 303 Mich. App. 651, 660-61 (2014). "Courts, however, may not imply a contract if the parties have an express contract covering the same subject matter." *Id.* Plaintiffs cite to Fed. R. Civ. P. 8(d)(3), which provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency," to support its ability to plead inconsistent claims.

Where there is no contract governing the parties, a court may imply a contract to prevent unjust enrichment. *Fodale v. Waste Mgmt. of Michigan, Inc.*, 271 Mich. App. 11, 36 (2006). In this case, the subject matter of plaintiffs' claim is governed by an express agreement, that being the Deposit Agreement - an agreement acknowledged by both parties. Where the parties admit that a contract exists, but dispute its terms or effect, an action will not also lie for unjust enrichment. *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 824, 833-34 (E.D. Mich. 2014) (citations omitted).

Defendant's motion to dismiss Count Four is granted.

VI. <u>Michigan Consumer Protection Act</u>

Plaintiffs assert that defendant violated the Michigan Consumer Protection Act ("MCPA") by "engag[ing] in unfair business practices relating to the imposition of overdraft fees on customers . . . ." (FAC ¶ 137). The MCPA, however, expressly exempts any "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." M.C.L. § 445.904(1)(a). The Michigan Supreme Court has determined that whether a claim falls under the broad exemption afforded by M.C.L. § 445.904(1)(a) is based on "whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 465 (1999); *see also Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 212-13 (2007).

The general transactions alleged in this case are defendant's provision of banking services to its customers, which are the type of conduct covered by the MCPA's exception. Even plaintiffs admit that "Flagstar is a federal savings association, subject to the National Bank Act, 12 U.S.C. § 1, *et seq.*, and regulations promulgated by the Office of the Comptroller of the Currency." (FAC ¶ 15). Because Flagstar's general transactions are "specifically authorized by law," the MCPA exemption applies, and plaintiffs' MCPA claim must be dismissed.

## CONCLUSION

For the reasons stated in this opinion and order, defendant's motion to dismiss state claims is GRANTED in part. Counts Two, Three, Four and Five of plaintiffs' complaint are dismissed with prejudice. Count Six, alleging violations of the Federal

-8-

Fair Credit Reporting Act, remains pending before the court. Count One is dismissed without prejudice. Plaintiffs may amend Count One to state a claim for breach of contract only, on or before March 1, 2016.

Dated: February 10, 2016

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on February 10, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk