UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES LOSSIA, JR. and
ALEXANDRA PLAPCIANU,
individually and on behalf of
others similarly situated,

               Plaintiffs,

vs.

               Case No. 15-12540

               HON. GEORGE CARAM STEEH

FLAGSTAR BANCORP, INC.,
a/k/a FLAGSTAR BANK,

               Defendant.

_____/

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [DOC. 62]

       This matter comes before the court on defendant Flagstar Bancorp,

Inc.'s ("Flagstar") motion for summary judgment of plaintiffs James Lossia

and Alexandra Plapcianu's third amended complaint.  The court heard oral

argument on Flagstar's motion on March 27, 2017.  For the reasons set

forth below, Flagstar's motion for summary judgment is GRANTED.

FACTUAL BACKGROUND

       Flagstar is a federally chartered bank incorporated in the State of

Michigan.  The plaintiffs opened a joint checking account on December 6,

2014 and signed Flagstar's signature card acknowledging that they

- 1 -

received and agreed to the written terms of their account on January 15,

2015.  Flagstar's Terms and Conditions and Disclosure Guide

("Agreement") governs plaintiffs' relationship with Flagstar.  The Agreement

contains the following provision:

> **Payment Order of Items**
> . . . .
>
> Our policy is to process wire transfers, online banking transfers,
> in branch transactions, ATM transactions, debit card
> transactions, ACH transactions, bill pay transactions and items
> we are required to pay such as returned deposit items, first – as
> they occur on their effective date for the business day on which
> they are processed.  We process checks and similar items
> second – in the order in which they are received for the
> business day on which they are processed.
> . . . .

ACH transactions are electronic, automated clearinghouse

transactions.  Flagstar explained that it receives ACH transactions in

batch format from the Federal Reserve and then processes the ACH

transactions in the order set by the Federal Reserve.  (Barlow dep. at

134-36).  The Federal Reserve, in turn, receives the ACH transaction

files from the merchants with whom the transactions were initiated.

Flagstar does not re-sequence the ACH transactions it receives from

the Federal Reserve.  Flagstar began its current practice of

processing ACH transactions in this way in 2012.  (Barlow dep. at 151-52).

Prior to 2012, Flagstar's policy was to reorder checks and ACH transactions from largest to smallest.  (Barlow dep. at 12).  Defendant cites to Flagstar's Operating Statements to show that in 2012 Flagstar experienced a significant decline in income from deposit fees and charges.  In September, 2014, Flagstar undertook a new project which implemented a "Posting Modification" relating to overdrafts. According to a confidential document produced in discovery, Flagstar implemented "OD & Bounce Re-launch" in the first quarter of 2015 and saw an increase in income from deposit fees and charges.  It is against this backdrop that plaintiffs' bring their lawsuit for violations of the Deposit Agreement.

Between February 25 and February 28, 2015, plaintiff Lossia initiated ten ACH transactions.  On March 2, 2015, at 6:20 a.m., Lossia checked his transaction history online with Flagstar and observed that the ten transactions were listed as "pending" in a different order than the order in which he initiated them.  Lossia knew he did not have enough money in the account to cover the transactions.  He checked his online transaction history again at

11:58 a.m. and noticed that the ten previously "pending" transactions had now posted and were in a different order than earlier in the day. In addition, Flagstar had assessed seven overdraft fees. The same day, Lossia called Flagstar and in a 28 minute call complained that his transactions were processed in a different order than the order in which he initiated them and that he was charged more than the maximum number of five permitted insufficient fund ("NSF") fees per day. During this call, Lossia told the Flagstar representative that he intended to charge the Google Wallet transaction to his credit card, but mistakenly charged it to his Flagstar account. (Def. Ex. F, phone call transcript and Ex. G, audio file) Two days later, the same transactions appeared online in yet a different order and still showed the seven NSF fees. When plaintiffs received their end of cycle bank statement, the transactions were shown in still a different order and an eighth overdraft fee was charged on March 2, 2015 on a physical check. The statement shows that Flagstar reversed three of the eight disputed NSF fees on March 3, 2015.

Plaintiffs' March 2, 2015 bank statements show the order in which Flagstar processed the ten ACH transactions at issue:

$2,825 to GOOGLE GOOGLE.COM/CH – WALLET/TOP

$500 to AMEX EPayment ER AM – ACH PMT
$200 to CHASE – EPAY
$450 to USAA.COM PAYMNT ACH PAYMENTS
$500 to CHASE – EPAY
$200 to CHASE – EPAY
$200 to CITI CARD ONLINE – PAYMENT
$100.00 to DISCOVER DC PYMNTS DCIINTNET
$200 to DISCOVER DC PYMNTS DCIINTNET
$185.71 to BARCLAYCARD US – CREDITCARD

The order of these transactions matches the order in which they appear in the ACH "batch" files that Flagstar received from the Federal Reserve.

Plaintiffs stopped using the Flagstar account after Flagstar refused to refund the five remaining NSF fees assessed on March 2, 2015. On May 1, 2015, Flagstar notified Lossia that the account had been charged off and closed due to a continuous overdraft position. Flagstar referred the account to Client Financial Services ("CFS"), a collection agency. It also reported the amount to a consumer reporting agency, ChexSystems.

Plaintiff Lossia contends that on July 16, 2015, he submitted a written notice of dispute to ChexSystems disputing the information reported by Flagstar on his credit report. (Pl. Ex. 14, Postal Service Certificate of Mailing) Flagstar responds that it never received notice of the dispute from ChexSystems. ChexSystems states that it did not

- 5 -

receive a notice of dispute from Lossia prior to September 21, 2015. (Def. Ex. 14, ChexSystems Aff.)

On September 21, 2015, ChexSystems received written notice of Lossia's dispute of the information Flagstar reported to ChexSystems regarding his charged-off account.  ChexSystems placed the account on reinvestigation status.  On September 23, 2015, ChexSystems sent Flagstar a Standard Investigation Form notifying Flagstar that Lossia was disputing the amount Flagstar was reporting he owed and asked the bank to verify the charged-off amount of Lossia's debt.  ChexSystems requested that Flagstar submit a response to Lossia's dispute and stated that it would remove the disputed information from its files if Flagstar did not submit a response by October 19, 2015.

Flagstar investigated its reporting of plaintiffs' checking account.  Sharon Whitney, a team leader in Flagstar's Central Services Department, testified that she investigated plaintiffs' account and confirmed that the fees were legitimate and the account balance was negative for at least 60 days.  (Pl. Ex. 13, Whitney dep. at 9-10, 16, 27, 33).  Flagstar's legal department completed the response to ChexSystems' Standard Reinvestigation Form notifying

ChexSystems that it should remove the disputed information on Lossia's credit report because "Flagstar has determined that the disputed amount is the subject of pending litigation".  Ms. Whitney provided this response form to ChexSystems on October 20, 2015.  ChexSystems removed the trade line from Lossia's credit report on October 19, 2015.

Flagstar ultimately removed Lossia's trade line from collections because the account was the subject of this litigation.  Flagstar also notified CFS to remove Lossia's account from collections.

<u>STANDARD FOR SUMMARY JUDGMENT</u>

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986);

- 7 -

*see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with

- 8 -

"specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

ANALYSIS

I.  Breach of Contract

Plaintiffs' breach of contract claim is based primarily on the allegation that Flagstar reorders transactions to maximize overdraft fee revenue in violation of the Deposit Agreement.  In order to determine if a breach has occurred, it is important to first understand how ACH transactions are processed.  There are five participants in an ACH transaction: (1) the Originator; (2) the Originating Depository Financial Institution ("ODFI"); (3) the ACH Operator; (4) the Receiving Depository Financial Institution ("RDFI"); and the Receiver.  In this case, the Originator is Lossia, who initiated the ACH entries.  The Receivers are the entities Lossia intended to pay.  The ODFI, in this case Flagstar, receives payment instructions from

the Originator and forwards that entry to the ACH Operator, which is the central clearinghouse that forwards the ACH entry to the RDFI.  The ACH Operator in this case is the Federal Reserve.  After the RDFI, the Receiver's bank, receives the ACH entry from the Federal Reserve, it posts the entry to the account of the Receiver.  All ACH transactions are governed by the National Automated Clearing House Association ("NACHA") Operating Rules.

Taryn Barlow, First Vice President, Retail and Commercial Services Director at Flagstar, testified that Flagstar processes ACH transactions in the order in which the transactions are received in batch files generated by the ACH Operator, the Federal Reserve.  (Def. Ex. 5, Barlow dep. at 132-35)  The order is determined based on the order in which the Federal Reserve receives the transactions from various merchants.  (*Id.*)  Lossia testified that he understood that his ACH transactions were to be processed in "[t]he order they were presented to the bank . . ."and not the order in which they were initiated by him.  (Def. Ex. 2, Lossia dep. at 48, 55)  Plaintiffs' account statement and the Federal Reserve ACH transaction files, as received by Flagstar's Core database system, show that the ACH transactions are ordered in the exact same manner in both sets of documents.  (Def. Ex. 9 and 10)

The fact that plaintiffs' online banking displays changed the order in which transactions were listed could certainly confuse a bank customer, but it is not material to plaintiffs' breach of contract claim.  First, the Deposit Agreement addresses how transactions will be processed, not how they will be displayed online.  The screen shots of plaintiffs' account are not evidence of how the bank processed transactions.  Second, plaintiffs' bank statements show that the ACH transactions were processed in the order they occurred in the Federal Reserve batch files.  Third, the transactions are not processed in high-to-low order, which would be necessary if Flagstar's motive was to maximize overdraft fee revenue.  In the series of transactions highlighted by plaintiffs, the first transaction is the largest, but after that there is no pattern to the order in which the debits are processed.

Plaintiffs argue that the Deposit Agreement does not explain the role of the Federal Reserve with respect to the order in which ACH transactions are processed in a way that an unsophisticated customer would understand.  The Agreement simply states that Flagstar processes ACH transactions "as they occur on their effective date for the business day on which they are processed . . ."  However, given that ACH transactions are processed pursuant to NACHA operating rules, which the Deposit Agreement is subject to, Flagstar's explanation that the transactions are

processed as they are received from the Federal Reserve clearly corresponds with what is meant by the phrase "as they occur."

Plaintiffs next argue that the Deposit Agreement treats ATM transactions, POS transactions and ACH transactions in the exact same manner and states they are all processed "as they occur."  ATM and POS transactions are posted in real time, while ACH transactions are presented by the Federal Reserve in the order in which they are submitted by the merchants.  The fact that the different types of transactions are handled in different ways in the banking industry does not change the fact that they are all processed "as they occur."

A second breach of the Deposit Agreement alleged by plaintiffs is that Flagstar permits overdraft fees in excess of the maximum allowed per day. While plaintiffs acknowledge that Flagstar reversed the three NSF fees the following day, they contend they were still damaged because their transactions were declined.  As a result, several third party payees resubmitted the declined transactions over the course of the next several days in accordance with their own policies.  This resulted in Flagstar charging plaintiffs three additional overdraft fees on March 3, one additional fee on March 4, three additional fees on March 5 and three additional fees on March 6.  However, none of these additional NSF fees on subsequent

days have anything to do with Flagstar charging more than 5 NSF fees in one day. Rather, they have to do with plaintiffs having insufficient funds in their account to cover the transactions they initiated.

Plaintiffs present expert witness testimony that Flagstar had the ability and technology to limit the NSF fees it could charge in one day to five. According to plaintiffs, the fact that Flagstar did not utilize its ability to program its software to limit the number of NSF fees assessed per day demonstrates that such assessments were intentional. Plaintiffs further allege that defendant does not automatically reverse excessive overdraft fees.

Flagstar responds to this allegation by stating that if plaintiffs had asked this question in discovery they would have learned that Flagstar's system is programmed to automatically generate a list of customers who have had more than five overdraft fees assessed against their accounts in a day. The bank then manually reverses these fees for all affected customers the next day. (Def. Ex. A, Barlow dep. at 9) This evidence contradicts plaintiffs' theory that Flagstar only reversed the excess NSF fees because plaintiffs asked them to do so. The testimony of plaintiffs' experts is not helpful because it is based on speculation. They opine about Flagstar without any reference to the facts of this case. They offer

conclusory assertions about what merchants do rather than about bank practices.  The court finds that plaintiffs' experts' testimony provides little value to the pending motion.

The third alleged breach of contract is that Flagstar charges overdraft fees even when there are sufficient funds in the account to cover the transaction.  This issue was the subject of a class action lawsuit that was filed against Flagstar in Oakland County Circuit Court, *Faris v. Flagstar Bank, FSB*, Oakland County Circuit Court Case No. 15-145287-CZ (the "*Faris* Case").  The *Faris* Case certified  a class of "all Flagstar customers in the United States who had one or more deposit accounts and who incurred an overdraft fee based on a debit transaction that did not exceed the money in their account" from October 21, 2017 through October 8, 2015.  (Def. Ex. 17, Final Judgment November 18, 2016)

Defendant contends that the plaintiffs' claim is covered by *Faris*, although plaintiffs are not identified as class members.  The court agrees that the ACH transactions at issue are debit transactions because they removed money from an account.  Furthermore, plaintiffs maintained their Flagstar account within the class period.  The *Faris* Settlement Agreement provides that the overdraft fees covered "any fee assessed to an Account when paying an item that the Account lacks sufficient funds (as determined

by the Bank at the time of posting) to cover." (Def. Ex. E, Settlement Agreement ¶ 42) The *Faris* release extinguishes all claims that could have been filed in the case including claims relating to all of Flagstar's "policies and procedures" concerning "Overdraft Fees" and "the ordering of transactions". (Pl. Ex. 17, Final Judgment at ¶ 6). Plaintiffs are not listed as *Faris* class members because the evidence shows they were only charged NSF fees when they did not have sufficient funds in their account to cover the ACH transactions. Even if plaintiffs could state a valid claim for breach of the Deposit Agreement, their claim is subject to the *Faris* release.

It is clear from the evidence in this case that instead of suffering due to Flagstar's "unfair, misleading, and deceptive practices" of reordering transactions, plaintiffs' overdraft fees were self-inflicted. Lossia admitted during his March 2, 2015 phone call to the bank that he never intended to pay the $2,825 Google Wallet transaction from his Flagstar account. (Def. Ex. F, Transcript entries 17-29). Lossia explains that he intended to use his credit card to pay the Google Wallet transaction, but the way his Google Wallet account was set up to detect fraud caused it to default to debiting his bank account instead of charging his credit card.

Plaintiffs have not provided sufficient evidence to raise a question of material fact that defendant breached the terms of the Deposit Agreement. In order to survive a motion for summary judgment a plaintiff must provide more than mere suspicion in support of a claim. Defendant's motion for summary judgment on plaintiffs' breach of contract claim is GRANTED.

II. Fair Credit Reporting Act

Flagstar's duties under the Fair Credit Reporting Act arise after the bank receives a notice of dispute from a consumer reporting agency ("CRA") like ChexSystems. 15 U.S.C. §1681s-2(b)(1). Once notified, furnishers of information must perform several tasks, including investigating the dispute, reviewing the information provided by the CRA, and reporting the results of that investigation to the CRA. 15 U.S.C. §1681s-2(b)(1)(A)-(E). "[T]he investigation an information furnisher undertakes must be a reasonable one," meaning it "denotes a 'fairly searching inquiry,' or at least something more than a merely cursory review." *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012) (citations omitted). The FCRA expressly creates a private right of action against a furnisher who fails to satisfy one of the duties identified in 15 U.S.C. §1681s-2(b). A consumer who demonstrates that a furnisher was negligent in breaching one of the duties with respect to that consumer's disputed information is entitled to

- 16 -

actual damages under 15 U.S.C. §1681o.  If the consumer can establish that a furnisher willfully violated one of the duties, then the consumer can recover actual or statutory damages, as well as punitive damages, pursuant to 15 U.S.C. §1681n.  *Id.* at 618.

Flagstar received ChexSystems' Request for Reinvestigation, dated September 23, 2015, and undertook an investigation of plaintiffs' account. (Def. Ex. 13, Whitney dep. at 9-10)  Ms. Whitney testified to verifying the fees in plaintiffs' bank statements to make sure they added up to "what our system [was] saying" and confirming that the disputed charges were 60 days past due.  (*Id.* at 10, 27, 33)  Whitney also consulted with Flagstar's Central Services department and its legal department due to the pending litigation regarding the disputed charges.  (*Id.* at 32-36)

Following the investigation of plaintiffs' notice of dispute, Flagstar reported the results of its investigation to ChexSystems and instructed ChexSystems to remove the disputed trade line from Lossia's credit report because of pending litigation.  (Def. Ex. 16) Flagstar also notified Client Financial Services to cease collection activity on plaintiffs' account.  The disputed information no longer appears on Lossia's credit report, and it never occurred on Plapcianu's credit report.

Lossia states in his Affidavit that he submitted a written notice of dispute to ChexSystems on July 16, 2015.  (Pl. Ex. 7)  Lossia has also submitted a proof of mailing his dispute to ChexSystems on that date.  (Pl. Ex. 14)  Plaintiffs argue that there is an issue of fact when Flagstar was first notified of the disputed information, and therefore when their duties were triggered under the FCRA.  However, ChexSystems provided an Affidavit stating that it had no record of ever receiving the alleged July notice of dispute from Lossia, and that the first written notice of dispute was received September 21, 2015.  (Def. Ex. 14, ChexSystems Aff at ¶7-8)

To trigger the FCRA requirements, ChexSystems must provide the notice to Flagstar.  Any evidence that Flagstar knew of Lossia's dispute because Lossia complained directly to Flagstar is immaterial under the FCRA because furnisher's obligations are only triggered by receipt of notice from a credit reporting agency.

Lossia next argues that Flagstar still failed to comply with its duties under the FCRA after receiving notice of his September 21, 2015 dispute. Flagstar had 30 days to investigate and respond under the statute, but it was one day late in fulfilling its obligations.  Technically this is not true.  The notice of dispute sent to Flagstar by ChexSystems was dated September 23, 2015.  This means Flagstar had thirty days, or until October 23, 2015,

- 18 -

to respond.  However, ChexSystems' notice gave Flagstar until October 19, 2015 to respond.  The fact that Flagstar responded to ChexSystems on October 20 is not a violation of any duty on the part of Flagstar. Furthermore, ChexSystems deleted the contested reporting on October 19, within 30 days after the notice was given.  Because this is the exact result Lossia would have obtained had Flagstar submitted its response a day earlier, there is no consequence resulting from Flagstar's actions.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is GRANTED in its entirety.

Dated:  March 29, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 29, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk